IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH G. D'ARCO, | |
| Plaintiff, | No. 22-cv-01784 |
| v. | Judge John F. Kness |
| R F BEVERAGE LLC, D/B/A ROMANO BEVERAGE | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joseph D'Arco alleges that his employer, Defendant R F Beverage LLC, d/b/a Romano Beverage ("Defendant" or "Beverage"), terminated him on account of his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"). 29 U.S.C. § 623. Defendant now moves for summary judgment. For the reasons stated below, Defendant's motion is granted.

**I.   BACKGROUND**

In June 2021, Defendant, a beverage distribution company, entered an agreement with Kendall-Jackson Wines ("Kendall-Jackson"), a wine supplier, under which Defendant would act as Kendall-Jackson's distributor. (Dkt. 27 ¶ 11.) Defendant expected that the partnership with Kendall-Jackson would double or triple its sales. (Dkt. 32 ¶ 7.) With input from Kendall-Jackson, Defendant hired Tim Hill, Michael O'Brien, and Ken Abolins, former Kendall-Jackson employees, to form a

team that would lead Defendant's sales force. (Dkt. 27 ¶ 14.) This management team also included Matt Helms, who was already a Beverage employee. (*Id.* at ¶ 17.) To take on the increased sales volume resulting from the Kendall-Jackson deal, the team restructured its sales routes and territories and set up new divisions within the company. (*Id.* ¶ 16.) The team then began a process to select sales representatives to cover the newly designed routes and territories. (*Id.* ¶ 17.) In July 2021, Defendant held interviews with current sales employees who were interested in these sales positions. (*Id.* ¶ 22.)

Plaintiff Joseph D'Arco began working for Defendant in 2017 after Defendant purchased the inventory of Plaintiff's own distributorship, which Plaintiff had run for over 13 years. (Dkt. 32 ¶ 1.) Plaintiff was born in 1954 and was approximately 66 years old when the Defendant's new management team began restructuring its sales routes and territories in connection with the new Kendall-Jackson partnership. (Dkt. 27 ¶ 4.) While working for Defendant as a sales representative, Plaintiff made approximately $1,300,000 in sales from June 2020 to June 2021. (Dkt. 32 ¶ 6.) Plaintiff intended to continue working for Defendant, and he attended an interview in July 2021. (*Id.* ¶ 23.) When Plaintiff arrived at the interview site, he inadvertently interrupted another candidate's interview when he walked into the interview room. (*Id.* ¶ 24.) After Plaintiff left the room and the other candidate's interview concluded, several Beverage employees, including Tim Hill, Michael O'Brien, and Tom Ravensberg, interviewed Plaintiff. (*Id.* ¶ 25.)

2

During the hiring process, Beverage employees expressed concerns regarding Plaintiff's suitability to continue working for Defendant given the new partnership with Kendall-Jackson. Matt Helms expressed concern that Plaintiff would have difficulty transitioning to a different type of sales environment that would involve larger deals. (*Id.* ¶ 26.) Michael O'Brien advocated for certain candidates over Plaintiff, believing they would be better suited for the role. (*Id.* ¶ 28.) No Beverage employee mentioned age as a reason not to retain Plaintiff. (*Id.* ¶ 34.) Michael Romano, the president of Beverage, received recommendations against Plaintiff's retention, and on July 30, 2021, Romano informed Plaintiff that Beverage did not have a role for Plaintiff going forward. (*Id.* ¶ 31.) In plain terms, this meant that Defendant had terminated Plaintiff. (*Id.*)

Following Plaintiff's termination, Defendant hired several new sales employees, some of whom were under 40 years old and some of whom were in their 50s, 60s, and 70s. (*Id.* ¶ 40.) Defendant also terminated employees besides Plaintiff, including a 62-year-old sales representative and a 68-year-old sales representative, and reassigned other sales representatives to different roles within the company. (Dkt. 32 ¶¶ 24–27.) Plaintiff's previous customer accounts were divided among numerous Beverage sales representatives; this group included new hires, some of whom were over ten years younger than Plaintiff and some of whom were within ten years of Plaintiff's age. (Dkt. 23-8 (employee information displaying dates of birth); Dkt. 27-3 (route data showing which sales representatives covered Plaintiff's customer accounts in the year following his termination).)

3

Plaintiff eventually brought this action in which, through his first amended complaint (Dkt. 10), he alleges a single count of age discrimination in violation of the ADEA. After a period of discovery, Defendant now seeks summary judgment in its favor. (Dkt. 22.)

## II. STANDARD OF REVIEW

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted). All facts, and any inferences to be drawn from them, are viewed in the light most favorable the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III. DISCUSSION

Under the ADEA, employers are prohibited from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Skiba v. Illinois R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018). To prevail on an ADEA claim, a plaintiff must prove that "age was the 'but for' cause of the challenged job action." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018). There are two analytical approaches for determining causation under the ADEA: (1) the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); and (2) the holistic evidence framework explained in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). *See Skiba*, 884 F.3d at 719–20. Under either approach, summary judgment here is appropriate.

### A. The *McDonnell Douglas* Burden-Shifting Framework

Under the established burden-shifting framework of *McDonnell Douglas*, a plaintiff must first establish a prima facie case of age discrimination. *Brooks v. Avancez*, 39 F.4th 424, 434 (7th Cir. 2022). If the plaintiff establishes a prima facie case, then the defendant must provide "legitimate, nondiscriminatory reasons" for terminating the plaintiff, at which point the burden shifts back to the plaintiff to "demonstrate that [the defendant's] reason is pretextual—that is, an attempt to mask a discriminatory reason with a legitimate excuse." *Id*. As explained below, although Plaintiff can establish a prima facie case, Defendant provides a legitimate, nondiscriminatory reason for Plaintiff's termination that Plaintiff fails to show is pretextual.

5

1.   *Plaintiff's Prima Facie Case*

To establish a prima facie case of discrimination, a plaintiff "must show that she: (1) is a member of a protected class; (2) performed reasonably at her job; and (3) suffered an adverse employment action." *Brown v. DS Servs. of America, Inc.*, 246 F. Supp. 3d 1206, 1217 (N.D. Ill. 2017) (citing *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690 (7th Cir. 2006)). When a plaintiff's position has been eliminated entirely through a reduction in force ("RIF"), the plaintiff must additionally show that she "was discharged and that other, similarly situated employees who were not members of the plaintiff's protected class were treated more favorably." *Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000); *see Marnocha v. St. Vincent Hosp. and Health Care Ctr., Inc.*, 986 F.3d 711, 720 (7th Cir. 2021) (clarifying the standard in RIF cases). In the alternative, when a terminated employee's duties are "absorbed" by other employees rather than eliminated, a plaintiff must make the less-burdensome showing that those employees were "not in the protected class." *Merillat*, 470 F.3d at 690. This scenario is called a "mini-RIF," although "the critical inquiry" in distinguishing a mini-RIF from a RIF "is not determining how many employees were laid off but whether the duties of those individuals were absorbed by existing staff or eliminated altogether." *Brown*, 264 F. Supp. at 1217 n.6; *see Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 693–94 (7th Cir. 2000) (applying the mini-RIF framework "[e]ven though [defendant] discharged multiple employees at the time it discharged [plaintiff]").

It is undisputed that Plaintiff can establish the first three elements of a prima face RIF or mini-RIF case. Plaintiff was 66 years old when he was terminated (Dkt.

6

27 ¶ 4), Defendant concedes that Plaintiff performed his duties adequately, and Plaintiff suffered an adverse employment action when he was fired. (Dkt. 22 at 9.)

Plaintiff and Defendant disagree, however, on whether the Court should analyze the fourth element as either a (maxi-) RIF or mini-RIF. Plaintiff argues that his termination constituted a mini-RIF. Defendant counters that, because Defendant terminated multiple employees along with Plaintiff, the full RIF framework should be applied. (Dkt. 26 at 10; Dkt. 31 at 3–4.) Defendant's own citations to the record, however, show that Defendant reassigned other employees to cover Plaintiff's former customers. (*See* Dkt. 23-8.) In effect, Plaintiff's sales responsibilities were absorbed rather than eliminated. That Defendant terminated multiple employees is inapposite. *See Michas*, 209 F.3d at 693–94. Analysis of Plaintiff's termination should therefore proceed under the mini-RIF framework.

To establish a prima facie case in the mini-RIF context, Plaintiff must show that his duties were absorbed by employees outside the protected class or by "substantially younger" employees, which the Seventh Circuit has construed to entail employees who are at least ten years younger than the plaintiff. *Merillat*, 470 F.3d at 690; *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 321–22 (7th Cir. 2003) ("The Seventh Circuit has defined 'substantially younger' as generally ten years younger."). When a plaintiff's duties are absorbed by employees who are "substantially younger" than the plaintiff, as well as by employees who are not, the plaintiff can establish a prima facie case by showing that fewer than "half of the individuals who assumed [plaintiff's] job duties were in the protected class[.]" *See*

7

*Kazhinksy v. William W. Meyer & Sons, Inc.*, 2003 WL 22735867, *5 (N.D. Ill. Nov. 19, 2003) (citing *Bellaver*, 200 F.3d at 495). The route data submitted by Plaintiff, which lists customer accounts covered by Plaintiff in 2021 and the names of the employees who covered those accounts in 2022, in combination with employee information displaying those employees' birthyears, shows that at least half of the employees who absorbed portions of Plaintiff's customer accounts were more than ten years younger than Plaintiff. (Dkt. 23-8; Dkt. 27-3.) The record thus at least raises a factual dispute as to whether Plaintiff's responsibilities were absorbed by "substantially younger" employees. Construing all inferences in favor of the nonmovant, the Court finds that Plaintiff has established a prima facie case of age-based discrimination.

> 2. *Defendant's Legitimate Non-Discriminatory Reason for Termination*

At this point, the burden shifts to Defendant to provide a "legitimate non-discriminatory reason" for terminating Plaintiff. *Skiba*, 884 F.3d at 719–20. Defendant asserts that Plaintiff was fired because Defendant believed, based on internal recommendations from Beverage employees, that the candidates who absorbed Plaintiff's duties were better suited to execute them, age aside. *See id.* at 724 (that "the individuals ultimately hired were better candidates" constituted a "legitimate, nondiscriminatory reason[ ] for [the defendant's] refusal to hire plaintiff for another managerial role"). Defendant explains that Plaintiff "would have had trouble transferring from a small distributor to a large distributor, as large distributors involve a different type of presentation and environment," while other

8

candidates appeared "more . . . sales achievement oriented" compared to Plaintiff. (Dkt. 23-6 at 43, 45 (quotations omitted).) Defendant adds that it found Plaintiff's job performance unimpressive, particularly with regards to the margins on his sales and his existing customer accounts. (Dkt. 31 at 7–8.) Defendant further states that Plaintiff refused to use certain technologies and made an unfavorable impression on Defendant's interviewers when he interrupted another candidate's interview, which contributed to the decision not to retain Plaintiff. (*Id.* at 9.) These reasons—factors that turn on an assessment of how Plaintiff would transition to a new sales environment compared to other candidates, independent of Plaintiff's age—constitute a legitimate, nondiscriminatory basis for Plaintiff's firing. Because of this, the burden shifts to Plaintiff to demonstrate that this reasoning was pretextual.

### 3. *Pretext*

To establish that a defendant's nondiscriminatory reason for termination was pretextual, a plaintiff "must present evidence from which we may infer that [the defendant] did not, at the time of his discharge, honestly believe the reason [it] gave for firing him." *Michas*, 209 F.3d at 695. Whether " 'the employer's stated reason was inaccurate or unfair' " is irrelevant to whether the reason was pretextual. *Skiba*, 884 F.3d at 724 (quoting *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011)). Rather, a plaintiff must "identify such weaknesses, implausibilities, inconsistencies, or contradictions in [the defendant's] asserted reason[s] 'that a reasonable person could find it unworthy of credence.' " *Id.* (quoting *Coleman v. Donahue*, 667 F.3d 835, 852 (7th Cir. 2012)). With indirect evidence, the plaintiff "must show that the employer's reason is not credible or that the reason is factually

9

baseless." *Perez v. Illinois*, 448 F.3d 773, 777 (7th Cir. 2007) (applying the same burden-shifting framework in a Title VII case). Plaintiff fails to meet this burden.

Disputing Defendant's contention that Michael Romano terminated Plaintiff based on recommendations from Tim Hill, Matt Helms, and Michael O'Brien as to who should cover the newly restructured sales routes, Plaintiff argues that Tim Hill was "not involved" in the termination decision. (Dkt. 26 at 12.) But Michael Romano stated in his deposition that Tim Hill was a part of the team that made recommendations regarding the hiring and retention of sales personnel. (Dkt. 23-2 at 56:14–19.) Romano also stated that Tim Hill described Plaintiff's interview to him in connection with the team's recommendation to hire or retain other candidates over Plaintiff. (*Id.* at 82:6–10.) Moreover, Tim Hill testified that Plaintiff's relationship with a restaurant called Volare "wasn't what we were looking for" in assessing candidates to cover sales routes. (Dkt. 23-7 at 62.) Although Plaintiff insists that the Volare relationship shows that he would have made a good candidate, Plaintiff cites no countervailing evidence refuting Hill's involvement in the termination decision or the honesty of Defendant's belief, informed by Hill and others, that there were better candidates for Defendant's newly restructured sales routes.

Plaintiff insists that Matt Helms "only raised a generalized concern" about Plaintiff's ability to "acclimate to selling large volumes"; in Plaintiff's view, Helms's concern was unfounded and actually made Plaintiff "more fit for the job." (Dkt. 26 at 12.) Plaintiff does not point to any evidence, however, to suggest that Helms's concern did not stem from his honest beliefs regarding Plaintiff's ability to acclimate to

working with Kendall-Jackson or that Helms's assessment had no basis in fact. Whether Plaintiff would have in fact acclimated well is irrelevant to determining pretext. *See Skiba*, 884 F.3d at 724.

Arguing that Michael O'Brien's "generalized belief that there were better candidates for the routes" was "at odds with reality," Plaintiff points to Defendant's retention of a 39-year-old employee with little to no wine sales experience. (Dkt. 26 at 13.) Defendant submits, however, that the 39-year-old was "hungry, [a] go-getter, . . . a little bit more . . . sales-achievement orientated" than Plaintiff (Dkt. 31 at 8), and Plaintiff points to no evidence suggesting that Defendant did not honestly believe that these qualities would make the younger candidate the better choice. Plaintiff thus fails to undercut the honesty of Defendant's belief that other candidates were better suited for the role.

Plaintiff also disputes the honesty of Defendant's belief that Plaintiff made an unfavorable impression on Defendant's interviewers after interrupting another candidate's interview in a disheveled manner. (Dkt. 26 at 13.) As evidence of pretext, Plaintiff provides his own testimony that he did not appear disheveled or act inappropriately during the interruption. (*Id.*) The accuracy or fairness of the interviewers' perception of Plaintiff during the interview, however, is irrelevant to whether Defendant's reasoning is pretextual. *See Skiba*, 884 F.3d at 724. Moreover, Defendant fired Plaintiff, not the interviewers, and Plaintiff does not point to any

11

evidence undermining the honesty of Defendant's belief that Plaintiff made an unfavorable impression.[1]

To undercut the credibility of Defendant's reasons for firing Plaintiff, Plaintiff states that "71% of Beverage's existing full time sales representatives over 50 years old were either terminated or reassigned . . . from their outside sales routes[.]" (Dkt. 26 at 14.)[2] In including employees who were reassigned as well as terminated, Plaintiff clouds the correlation between age and adverse employment action, as it is unclear that reassignment constitutes an adverse employment action. This statistic is also unconvincing, however, because it "fails to properly take into account nondiscriminatory explanations" for the correlation between an adverse employment action and age. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). Without addressing nondiscriminatory explanations for the correlation between adverse employment action and age, statistical evidence "does not permit an

---

[1] Plaintiff states in his brief that the interviewers appeared impressed by his sales to Kinzie Chophouse, a restaurant. (Dkt. 26 at 4.) During his deposition, Plaintiff stated that the interviewers "asked me about some of my restaurants. And when I mentioned Kinzie Chop House [sic], they seemed to have a little discussion amongst themselves, like, Wow. He got into . . . Kinzie Chophouse. Like that was quite an accomplishment." (Dkt. 23-3 at 47:9–14.) This statement might suggest that the interviewers believed a customer relationship constituted an accomplishment, but it does not show that Plaintiff ultimately made a favorable impression. Indeed, Plaintiff stated in his deposition that the interviewers "didn't seem to let on anything" from Plaintiff's perspective as to the impression he ultimately made. (*Id.* at 49:1–2.) At any rate, the statement does not undercut the honesty of Beverage's belief that other candidates were better suited for the role, regardless of whether the interviewers were impressed by Plaintiff's sales relationship with the restaurant.

[2] Plaintiff's brief presents statistical evidence regarding Defendant's hiring decisions and the variance in Defendant's reasoning for firing Plaintiff in the context of the holistic *Ortiz* analysis. But because Plaintiff argues that these facts undermine the credibility of Defendant's justification for Plaintiff's termination, the Court will also address them under the *McDonnell Douglas* framework.

inference of discrimination." *Id.* at 616–17. Plaintiff's data fails to rebut the possibility that, as Defendant alleges with respect to one 68-year-old employee who was terminated (Dkt. 32 ¶ 25), the expenses incurred by the terminated employees exceeded the gross profits that they earned. Plaintiff also submits that Defendant hired 23 new sales representatives between July 1, 2021 and July 22, 2022, and all but two of those new hires were at least 18 years younger than Plaintiff. (Dkt. 26 at 14.) This statistic similarly fails to consider nondiscriminatory explanations, such as the superior sales ability of the new hires, and therefore cannot support an inference of discrimination.[3]

Plaintiff finally identifies Defendant's "shifting" reasons for his termination as evidence of pretext. (Dkt. 26 at 15.) Plaintiff specifically emphasizes that Defendant stated in its interrogatory responses that Plaintiff was fired due to his refusal to use certain technology in reporting sales but then amended the response, adding that Plaintiff failed to impress Defendant's interviewers. (*Id.*) Although "[s]hifting and inconsistent explanations can provide a basis for a finding of pretext[,]" the "explanations must actually be shifting and inconsistent to permit an inference of mendacity." *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 577 (7th Cir. 2003); *see also Hanson v. Crown Golf Properties L.P.*, 826 F. Supp. 2d 1118, 1122 (N.D. Ill. 2011) (variation in the defendant's reasons for firing the plaintiff was not evidence of

---

[3] Even if the statistical evidence considered nondiscriminatory explanations for the correlation between age and adverse employment action, it fails to squarely address whether Defendant's reasoning was pretextual, as under the *McDonnell Douglas* framework, "statistical evidence is only one small part of a substantial web of evidence indicating pretext." *Bell v. EPA*, 232 F.3d 546, 553 (7th Cir. 2000).

pretext because the defendant's brief told a "cogent and consistent story about [the plaintiff's] firing"). Plaintiff's refusal to use technology and his impression on Defendant's interviewers stem from the consistent explanation that Plaintiff was relatively less suited to the work environment he would encounter, as compared to other candidates, if he were retained. Defendant's amendment to its interrogatory response therefore does not suggest that Defendant's reasoning was pretextual.

Because Plaintiff fails to present evidence that Defendant's justification for terminating Plaintiff was pretextual, summary judgment in favor of Defendant is appropriate under the *McDonnell Douglas* framework.

## B. The *Ortiz* Framework

Summary judgment is likewise appropriate under the *Ortiz* analysis. *Ortiz* requires the Court to look at the evidence of the case holistically to determine "whether that evidence would permit a reasonable factfinder" to conclude that a protected characteristic "caused the discharge" of the plaintiff. *Ortiz*, 834 F.3d at 765. Under the *Ortiz* framework, the " 'question is simply whether the same events would have transpired if plaintiff had been younger . . . and everything else had been the same.' " *McDaniel v. Progressive Rail Locomotive*, 343 F. Supp. 3d 753, 766 (N.D. Ill. 2018) (quoting *Skiba*, 884 F.3d at 725).

Plaintiff fails to present sufficient evidence to raise a factual dispute that his age caused his termination. Following the discovery process, Plaintiff can show that he was a reasonably competent wine salesman, that he was old enough to be targeted on account of his age under the ADEA, that he was fired by his employer, and that many, but not all, of the individuals who continued to work for Defendant were

14

"significantly younger" than Plaintiff (that is, under 57 years old). Plaintiff does not show by any combination of evidence that a triable issue exists as to whether his age constituted the "but-for cause" of his termination. Plaintiff points to Defendant's adjustment of its interrogatory response explaining why Plaintiff was terminated (Dkt. 26 at 15), but as discussed above, Defendant's amendment to its response does not show that the explanation was pretextual, nor does it establish a causal relationship between Plaintiff's age and his termination. And as discussed above, the statistics Plaintiff submits as evidence of age discrimination do not support such an inference and likewise do not support a finding that Plaintiff's age was the cause of his termination. Indeed, Defendant's hiring and retention of employees who were 59, 60, and over 70 years old significantly undermine an inference that Defendant generally discriminated against older employees. (*See id.* at 14.)

Plaintiff further argues that the Court should question the credibility of Defendant's justification for terminating Plaintiff because "no one" from Beverage has "accept[ed] responsibility for the termination decision[.]" (*Id.* at 15.) Putting aside whether this argument addresses the cause for Plaintiff's termination, Plaintiff mischaracterizes the record. Michael Romano stated during his deposition that he based his decision to terminate Plaintiff on his "acceptance of the recommendation by the team[.]" (Dkt. 23-2 at 87:12–15.) Romano thus took responsibility for the decision to terminate Plaintiff based on inputs he received from other Beverage employees. Plaintiff presents no evidence to counter this narrative in insisting that a jury should nonetheless "reject[ ] Beverage['s] justification[.]" (Dkt. 26 at 15.) Summary judgment

15

is therefore appropriate in favor of Defendant applying the holistic review of the evidence under *Ortiz*.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

SO ORDERED in No. 22-cv-01784.

Date: March 24, 2025

JOHN F. KNESS
United States District Judge

16